**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| ENRICO RENALDO TAFFI, | CASE NO. 5:25-CV-00040 |
| Plaintiff, | JUDGE DAVID A. RUIZ |
| vs. |  |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE AMANDA M. KNAPP |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Enrico Renaldo Taffi ("Plaintiff" or "Mr. Taffi") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I.    Procedural History

On May 25, 2022, Mr. Taffi filed an application for DIB, alleging a disability onset date of May 25, 2022. (Tr. 18, 177-83.) He alleged disability due to COVID-19, tachycardia due to COVID-19, shortness of breath, ulcerative colitis, ileostomy, and stomach pain. (Tr. 71, 96, 193.) His application was denied at the initial level (Tr. 92-96) and upon reconsideration (Tr. 103-06), and he requested a hearing (Tr. 107-08).

1

On October 16, 2023, a telephonic hearing was held before an Administrative Law Judge ("ALJ").  (Tr. 31-70.)  On November 28, 2023, the ALJ issued a decision finding Mr. Taffi had not been under a disability within the meaning of the Social Security Act from May 25, 2022, through the date of the decision.  (Tr. 15-30.)  Mr. Taffi sought review of the decision by the Appeals Council.  (Tr. 174-76.)  On November 8, 2024, the Appeals Council found no reason to review the decision, making the decision the final decision of the Commissioner.  (Tr. 1-7.)  On January 10, 2025, Mr. Taffi filed a Complaint challenging the decision (ECF Doc. 1), and the matter is fully briefed (ECF Doc. 6, ECF Doc. 7, ECF Doc. 8).

## II.    Evidence

### A.    Personal, Educational, and Vocational Evidence

Mr. Taffi was born in 1972.  (Tr. 24, 177.)  He was 49 years old on the alleged disability onset date, qualifying as a younger individual under applicable regulations.  (Tr. 24.)  By the time of his hearing, he was 51 years old and qualified as an individual closely approaching advanced age.  (Tr. 24, 39.)  He lived alone and was engaged.  (Tr. 41.)  He had a high school education and attended some college.  (Tr. 41-42.)  His past relevant work included owning a truck washing business and selling furniture.  (Tr. 42-47, 65.)  In his truck washing business, he had performed manual labor and managed employees and inventory.  (Tr. 42-49.)

### B.    Medical Evidence

Although the ALJ identified both physical and mental impairments as severe (Tr. 20) and Mr. Taffi summarized some mental health records in his briefing (*see, e.g.,* ECF Doc. 6, p. 3), his assignments of error relate to his physical impairments and physical RFC alone (ECF Doc. 6, ECF Doc. 8).  The medical records and opinions summarized herein are accordingly limited to those relating to Mr. Taffi's physical impairments, symptoms, and treatment.

2

### 1.    Relevant Treatment History

On January 29, 2021, Mr. Taffi presented to gastroenterologist Manzoor Qadir, M.D., at Gastroenterology North with complaints of abdominal pain.  (Tr. 846.)  He reported that he was diagnosed with ulcerative colitis when he was 36 years old and underwent a complete colectomy three years later.  (*Id.*)  He reported acute and sharp abdominal pain during the previous month, which had since stopped.  (*Id.*)  He reported no issues relating to using the bathroom.  (Tr. 846-47.)  On examination, he had an ileostomy bag at the right lower quadrant, his bowel sounds were normal, his abdomen was soft, and his musculoskeletal range of motion was normal.  (Tr. 848.)  Mr. Taffi's diagnoses included ileostomy, history of total colectomy, gastroesophageal reflux disease, and generalized abdominal pain.  (*Id.*)  Dr. Qadir noted that Mr. Taffi's abdominal pain had resolved, and questioned whether the pain might be related to post-surgical adhesions.  (*Id.*)  Dr. Qadir advised Mr. Taffi to return in three months.  (*Id.*)

A year later, on January 15, 2022, Mr. Taffi presented to the emergency room at Mercy Health Akron City Green, complaining of shortness of breath.  (Tr. 277.)  Joshua B. Sayers, M.D., evaluated him for tachycardia, hypertension, and shortness of breath in the context of a likely COVID-19 infection.  (*Id.*)  He reported that a family member recently tested positive for COVID-19.  (*Id.*)  He denied chest pains and any current palpitations.  (*Id.*)  His examination noted mild tachycardia with no evidence of acute coronary syndrome.  (Tr. 282.)  A COVID-19 test was positive.  (*Id.*)  He was discharged home with instructions to take over-the-counter medications for his aches and pains and to monitor his pulse oximetry and to return to the emergency room if it dropped below 92%.  (*Id.*)

On March 15, 2022, Mr. Taffi presented to Ranier Borda, M.D., at Akron Green Emergency Department, complaining of chest pain.  (Tr. 776.)  He said his chest pain started the

day before.  (*Id*.)  He reported some tingling in his left hand and fingers.  (*Id*.)  He also reported

that he had COVID in January and had "not felt right" since then, and noted that he was having

some shortness of breath.  (*Id*.)  He denied any gastrointestinal issues, and an examination of his

abdomen revealed no distention or tenderness, and that his abdomen was soft.  (Tr. 778.)  His

cardiovascular examination revealed regular rhythm, normal heart sounds, and no murmur; but

bradycardia was noted.  (*Id*.)  His musculoskeletal examination revealed normal range of motion.

(*Id*.)  Dr. Borda diagnosed Mr. Taffi with pneumonia and started him on antibiotics.  (Tr. 781.)

He was discharged the same day in stable condition.  (Tr. 782.)

On May 13, 2022, Mr. Taffi had a follow-up cardiology appointment with Yassar Nabeel,

M.D., at the Cleveland Clinic regarding intermittent palpitations and racing heartbeat that he had

been experiencing since his COVID infection in January 2022.  (Tr. 312.)  He denied chest pain,

shortness of breath, lightheadedness, or dizziness.  (*Id*.)  He reported no issues with staying

physically active at work washing trucks.  (*Id*.)  It was noted that an event monitor had been

completed in March 2022 without any significant arrhythmia, and that his symptoms were

mostly related to sinus rhythm and sinus artifact.  (Tr. 312, 317.)  An echocardiogram performed

in April 2022 showed normal LV function.  (Tr. 317.)  Physical examination findings were

unremarkable.  (Tr. 315.)  Dr. Nabeel's recommendations included CT coronary calcium scoring

to check for coronary atherosclerosis and that Mr. Taffi continue taking metoprolol.  (Tr. 317.)

On May 20, 2022, Mr. Taffi presented to Stephanie Nolan, PA-C, for a gastroenterology

visit for a "recheck" of his ileostomy and history of colectomy.  (Tr. 329.)  He also indicated that

he needed refills for his GERD medication.  (*Id*.)  His recorded medical history included

ulcerative colitis, status post ileostomy, urge incontinence, and palpitations.  (*Id*.)  He reported he

was "feeling well" that day.  (*Id*.)  He denied breakthrough reflux symptoms, abdominal pain,

4

nausea, vomiting, and dysphagia.  (*Id*.)  He said his appetite was good and his weight was stable.  (*Id*.)  He also said his ileostomy was working well.  (*Id*.)  He denied any bloody or black stools.  (*Id*.)  On examination, Mr. Taffi's abdomen was flat with normal bowel sounds, no tenderness was noted, and his ileostomy was in place.  (Tr. 332.)  His pulmonary effort and breath sounds were normal.  (*Id*.)  His musculoskeletal examination showed normal range of motion.  (*Id*.)  He was diagnosed with gastroesophageal reflux disease with esophagitis without hemorrhage.  (*Id*.)  PA Nolan advised Mr. Taffi to follow up in a year or as needed.  (*Id*.)

On June 2, 2022, Mr. Taffi presented to William Knight, D.O., at the Cleveland Clinic, Family Practice, complaining of ongoing post-COVID symptoms.  (Tr. 565.)  He reported that he had been in the emergency room 12-15 times since his COVID diagnosis in January 2022 for ongoing symptoms.  (*Id*.)  He reported that he was still having ongoing heart palpitations, rapid resting heart rate around 160 BPM, dizziness, fatigue, and he was still not feeling himself.  (*Id*.)  On a review of systems, Mr. Taffi was positive for palpitations, but negative for chest pain and leg swelling.  (Tr. 566.)  He was also negative for dizziness, joint pain, myalgias, abdominal pain, constipation, diarrhea, heartburn, nausea, and vomiting.  (*Id*.)  Physical examination findings were unremarkable.  (Tr. 568-69.)  His listed diagnoses included palpitations, primary hypertension, urge incontinence, and anxiety with depression.  (Tr. 569.)

On August 16, 2022, Mr. Taffi presented to the Akron Green Emergency Department, complaining of burning left-sided chest pain with radiation to his left arm.  (Tr. 897.)  He reported a sensation of electrical shocks in his left arm and leg and difficulty swallowing.  (*Id*.)  He described his chest pain as more discomfort.  (*Id*.)  He reported palpitations but denied shortness of breath or lower extremity pain/swelling.  (*Id*.)  Physical examination findings were unremarkable.  (Tr. 899-900, 901-02.)  A brain CT showed no acute intracranial abnormality,

and a chest x-ray showed no acute cardiopulmonary process.  (Tr. 902.)  Given Mr. Taffi's

unremarkable work-up and his overall stability while in the emergency department, he was found

stable for discharge and told to follow up with primary care.  (*Id*.)

On October 5, 2022, Mr. Taffi returned to Dr. Nabeel for a cardiology follow up

regarding palpitations and coronary artery disease.  (Tr. 872.)  He reported improvement in his

heart palpitations, indicating he had one episode three weeks earlier that lasted about 15 minutes;

when he checked the rhythm on his Kardia it showed sinus rhythm.  (Tr. 873.)  He also denied

chest pain, shortness of breath, lightheadedness, and dizziness.  (*Id*.)  He denied any

gastrointestinal issues.  (Tr. 876.)  His physical examination findings were unremarkable.  (*Id*.)

Mr. Taffi reported that he was physically active, walking about a mile without any issues.  (Tr.

878.)  Dr. Nabeel started Mr. Taffi on Lipitor and aspirin, continued Mr. Taffi's metoprolol,

recommended a low-salt cardiac healthy diet, regular aerobic physical activity, and weight loss,

and advised Mr. Taffi to return in about six months.  (Tr. 878-79.)

On December 5, 2022, Mr. Taffi returned to Dr. Knight.  (Tr. 889.)  He was interested in

increasing his Flomax medication to once in the morning and once at night because of issues

with urination.  (Tr. 889, 890.)  He also wanted to be tested for sleep apnea because he had not

been sleeping well and was waking up gasping for air.  (Tr. 889.)  He said he was tolerating his

medications, and his blood pressure readings were stable.  (*Id*.)  He denied chest pain and

shortness of breath and said that his palpitations were better on his current medications.  (*Id*.) A

review of systems was negative for abdominal pain, blood in stool, constipation, diarrhea,

nausea, and vomiting.  (Tr. 890.)  Physical examination findings were unremarkable.  (Tr. 893-

94.)  Mr. Taffi's diagnoses included palpitations and urge incontinence.  (Tr. 894.)  He was

prescribed a home sleep apnea test.  (*Id*.)

On December 7, 2022, Mr. Taffi presented to Kathy Bordenkircher, APRN, CNP, at Akron Green Emergency Department, reporting concern over high blood pressure.  (Tr. 882.) He said he was at home on his couch watching television and he started having a pounding sensation in his chest and tingling and sweating in his hands and feet.  (*Id*.)  His blood pressure readings continued to rise from an initial reading of 168/98 so he decided to visit the emergency room.  (*Id*.)  He denied chest pain and paresthesias.  (*Id*.)  He said he had been told he had anxiety, but he did not feel that was a problem for him.  (*Id*.)  He expressed frustration over having weird illnesses since contracting COVID a year ago.  (*Id*.)  He said his doctor told him he needed to stop going to the emergency room so often and instead should be following up with his doctor.  (*Id*.)  A review of systems was negative for gastrointestinal or musculoskeletal concerns. (Tr. 884.)  On examination, it was noted that Mr. Taffi had an ostomy present.  (Tr. 885.) Otherwise, examination findings were unremarkable.  (Tr. 884-85.)  CNP Bordenkircher found that Mr. Taffi's blood pressure was not elevated to the point that emergency intervention was necessary; she found Mr. Taffi was stable for discharge and recommended that he follow up with his primary care physician.  (Tr. 886.)

On July 19, 2023, Mr. Taffi presented for a new patient cardiology appointment with Rose Campbell, APRN, CNP, at the Cleveland Clinic.  (Tr. 1082.)  He complained of left chest discomfort that was worse with activity and radiated at times to his left arm.  (*Id*.)  He reported being short of breath only when he was having chest discomfort.  (*Id*.)  He reported palpitations and fast heart rates with episodes of near syncope, but said he had never passed out.  (*Id*.)  He reported a lot of instances where his systolic blood pressure was up to 180 and said he became dizzy when his blood pressure was high.  (*Id*.)  A review of systems was positive for fatigue, shortness of breath, chest pain, palpitations, dizziness, and light-headedness; it was negative for

gastrointestinal and musculoskeletal issues.  (Tr. 1084-85.)  Examination findings were normal.
(Tr. 1085-86.)  His diagnoses included benign hypertension, mixed hyperlipidemia, palpitations,
shortness of breath, sinus node dysfunction, coronary artery calcification seen on CT scan in July
2022, hypokalemia, and sleep apnea.  (Tr. 1086-87.)

On September 7, 2023, Mr. Taffi underwent a stress test, achieving 7 METS, with a
notation that there was shortness of breath.  (Tr. 1105-06.)  On September 19, 2023, Mr. Taffi
presented to Michael Markel, M.D., in the cardiology department at the Cleveland Clinic for a
follow-up visit.  (Tr. 1029.)  He denied current problems with chest pain, pressure, or discomfort.
(*Id*.)  He denied shortness of breath, palpitations, lightheadedness, presyncope, or syncope.  (*Id*.)
An electrocardiogram (EKG or ECG) showed normal sinus rhythm and revealed no significant
change in comparison to an ECG from earlier that month.  (Tr. 1033.)  Mr. Taffi was diagnosed
with benign hypertension, coronary artery calcification, mixed hyperlipidemia, palpitations, and
tachycardia.  (Tr. 1033-34.)

### 2.    Opinion Evidence

On July 23, 2022, state agency medical consultant Bradley Lewis, M.D., opined that Mr.
Taffi's impairments did not meet or equal a listing.  (Tr. 76.)  He also opined that Mr. Taffi had
the physical RFC to: occasionally lift, carry, push, and pull 50 pounds and 25 pounds frequently;
stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday;
frequently climb ladders, ropes, and scaffolds; and frequently stoop, crouch, and crawl.  (Tr. 77-
78.)  On March 14, 2023, state agency medical consultant Elaine Lewis, M.D., affirmed Dr.
Lewis's findings.  (Tr. 86-88.)

### C.    Function Report

Plaintiff completed a Function Report on June 8, 2022.  (Tr. 222-29.)  He stated that his
conditions limited his ability to work because he had pain in his rectum, his ostomy was watery

at times and got in his way of washing trucks because he had to squeeze between trucks and the support beam, and he had heart palpitations from COVID and fatigue.  (Tr. 222.)  During the day, he said he watched television and performed minimal cleaning and shopping.  (Tr. 223, 224, 225, 226.)  He said he might fish one day a week and bowl three games one day a week for exercise.  (Tr. 223, 225, 226.)  He did some minimal cooking.  (Tr. 223, 224.)  He cared for his cat.  (Tr. 223.)  He reported no problems with personal care.  (*Id.*)

**D.    Hearing Testimony**

**1.    Plaintiff's Testimony**

At the October 16, 2023 hearing, Plaintiff testified in response to questioning by the ALJ and his counsel.  (Tr. 40-63, 68-69.)  He was 51 at the time of the hearing.  (Tr. 39.)  He lived alone in an apartment, had a driver's license, and was engaged.  (Tr. 41.)  While he had a driver's license, he said he avoided driving on highways as much as he could because he was on several blood pressure medications that made him dizzy.  (Tr. 68.)

Mr. Taffi said he was diagnosed with colitis when he was 36 years old and had an ostomy at age 39.  (Tr. 48.)  He no longer experienced symptoms from colitis on a regular basis, and said his biggest problem was that they removed his rectum after the ostomy surgery.  (*Id.*)  Removal of his rectum caused nerve damage, which in turn caused him to be in pain all day.  (*Id.*)  He estimated his pain ranged from a 3/10 up to a 10/10.  (*Id.*)  He had pain when he sat, and he estimated he could sit for 45 minutes before he had to stand up and move around.  (Tr. 48-49.)  He also had pain when he was standing or walking, and the pain was more intense if he was walking or running.  (*Id.*)  He estimated he could walk up to a mile.  (Tr. 49.)

Mr. Taffi also reported problems urinating.  (Tr. 50.)  He had trouble urinating while standing and typically had to sit down to urinate.  (*Id.*)  If he was in public and had to urinate

standing up, he often got "dribbles" and there were times when he had a noticeable "dribble spot" on his pants.  (*Id.*)  He recalled times when he "dribbled" while at work, which was embarrassing, and went home to change his clothes before returning to work.  (*Id.*)  He had to use the bathroom about every two hours, and it took him about 10 to 15 minutes to complete the process because he had to empty the ostomy.  (Tr. 50-51.)   He was not limited in the amount of weight he could lift, but said it was difficult for him to maneuver and grab and carry items due to the location of the ostomy.  (Tr. 50-52.)  There were times when he had ripped the ostomy away from him while at work because he was maneuvering between closely parked trucks or through other areas in the truck washing facility.  (Tr. 50-51.)  He said that having the ostomy also affected his ability to sleep because his ostomy expanded during the night, and he had to get up to release the gas from the ostomy or empty and clean it.  (Tr. 59, 69.)

Mr. Taffi also testified that he continued to have various issues and symptoms since he had COVID.  (Tr. 52-53.)  His blood pressure was not an issue before he had COVID, but he continued to have high blood pressure since getting COVID.  (Tr. 53.)  There were also a lot of times when he could feel his heart pounding or racing really hard.  (*Id.*)  That usually happened three times a week.  (*Id.*)  When it did happen, he would take a Xanax, lie down, turn the lights off, and relax, after which he would typically be knocked out for about three hours before everything would calm back down.  (*Id.*)   He said he was depressed following his mother's passing from COVID-19 and also due to his father's health conditions, but he could not take medication for it because every antidepressant he tried caused his ostomy to be straight water and balloon up and he had to run to the bathroom immediately.  (Tr. 55-56.)

E.     **Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing.  (Tr. 63-68.)  The VE classified Mr. Taffi's past relevant work as: (1) a sales clerk, a light, semi-skilled job; and (2) truck washer, a

medium, unskilled job that he performed at the heavy level.  (Tr. 65.)  In response to the ALJ's first hypothetical, the VE testified that an individual of Mr. Taffi's age, education and work experience and with the limitations described in the ALJ's light RFC determination (Tr. 22, 65-66) could not perform Mr. Taffi's prior work, but he could perform representative positions in the national economy, including deli clerk, sales clerk, and information clerk (Tr. 66).  If the hypothetical individual as described in the first hypothetical could perform sedentary rather than light work, the VE testified that the available jobs would include ticket checker, order clerk, and addresser.  (Tr. 66-67.)  If the individual described in the first hypothetical would also need four 15-minute unscheduled breaks during the workday, in addition to regularly scheduled breaks, the VE testified that there would be no work available.  (Tr. 67.)  Also, if the individual described in the first hypothetical would be off task 20% of the workday and absent three times per month, the VE testified there would be no work available.  (*Id.*)

## III.    Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.   "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform other work available in the national economy. *Id.*

## IV.    The ALJ's Decision

In his November 28, 2023 decision, the ALJ made the following findings:[1]

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026. (Tr. 20.)

---

[1] The ALJ's findings are summarized.

2.  The claimant has not engaged in substantial gainful activity since May 25, 2022, the alleged onset date.  (*Id.*)

3.  The claimant has the following severe impairments: long haul COVID, ulcerative colitis – status-post colectomy and ileostomy, urge incontinence, palpitations, post-traumatic stress disorder ("PTSD"), adjustment disorder, and anxiety disorder.  (Tr. 20-21.)  The claimant also has the following non-severe impairment: obstructive sleep apnea.  (*Id.*)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 21-22.)

5.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: The claimant can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he cannot work at unprotected heights or around hazardous machinery; he cannot perform commercial driving; he is limited to simple, routine tasks; he can only make simple work-related decisions; he is limited to frequent interaction with supervisors, co-workers, and the public; and he can tolerate changes in a routine work setting.  (Tr. 22-24.)

6.  The claimant is unable to perform any past relevant work.  (Tr. 24.)

7.  The claimant was born in 1972 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, and the claimant subsequently changed age category to closely approaching advanced age.  (*Id.*)

8.  The claimant has at least a high school education.  (*Id.*)

9.  Transferability of job skills is not material to the determination of disability.  (Tr. 25.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including deli clerk, sales clerk, and information clerk.  (Tr. 25-26.)

Based on the foregoing, the ALJ determined that Mr. Taffi had not been under a disability, as defined in the Social Security Act, from May 25, 2022, through the date of the decision.  (Tr. 26.)

13

## V.    Plaintiff's Arguments

Plaintiff identifies two assignments of error.  (ECF Doc. 6, pp. 1, 7-14.)  First, he asserts that the ALJ erred when he did not include the need for bathroom breaks in the RFC and/or failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.  (*Id*. at pp. 1, 7-10.)  Second, he asserts that the ALJ was not supported by substantial evidence when he found at Step Five that Plaintiff could perform work at the light exertional level.  (*Id*. at pp. 1, 10-14.)

## VI.    Law & Analysis

### A.    Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006)

(citing 42 U.S.C. § 405(g)).  "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'"  *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004))).  A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## B.     First Assignment of Error: The ALJ Properly Addressed Plaintiff's Ulcerative Colitis and Ileostomy at Step Three and Considered the Totality of His Impairments

In his first assignment of error, Mr. Taffi argues that the ALJ failed to consider: the effects of Plaintiff's ulcerative colitis at Step Three of the sequential analysis (ECF Doc. 6, pp. 7-9); and the totality of Plaintiff's impairments pursuant to SSR 96-8p (*id.* at pp. 9-10).[2]  The

---

[2] Although the caption for the first assignment of error challenges the ALJ's failure to include the need for bathroom breaks in the RFC (ECF Doc. 6, pp. 1, 7), Plaintiff has not clearly articulated or appropriately developed this argument (*see* ECF Doc. 6) and the undersigned therefore finds the argument waived. *See McPherson v. Kelsey*, 125

Commissioner argues in response that Plaintiff waived any argument under the Listings and did not meet his burden to prove that he met or equaled a Listing, and further that the ALJ's RFC determination was supported by substantial evidence.  (ECF Doc. 7, pp. 5-8.)  Plaintiff's two arguments in this assignment of error will be addressed in turn.

### 1.  Plaintiff Has Not Met His Burden to Show Error at Step Three

Mr. Taffi argues that the ALJ erred at Step Three of the sequential analysis because he "failed to consider the effects of Plaintiff's ulcerative colitis" despite references "[t]hroughout the medical records . . . to the fact that Plaintiff has ulcerative colitis status-post colectomy and ileostomy."  (ECF Doc. 6, p. 7 (citing records).)  Specifically, he argues the ALJ "failed to properly evaluate Plaintiff's continuing problems related to his ileostomy" and "made no Step Three analysis related to Plaintiff's ulcerative colitis and related ileostomy."  (*Id.* at pp. 8-9.)  The Commissioner argues that Plaintiff's arguments should be rejected because he has not met his burden to show that his impairments met or equaled a listing, he ignored the ALJ's relevant written findings, and he failed to raise a listings argument at his hearing.  (ECF Doc. 7, pp. 5-6.)

At Step Three, a claimant is disabled if his impairment meets or equals one of the listings in the Listing of Impairments.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'"  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1525(c)(3)).  The claimant bears the burden to prove that his condition meets or equals a listing.  *See* 20 C.F.R. § 404.1520(d); *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)).  To do so, he "must

---

F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citations omitted) (alterations in original).

present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004).

In order to *meet* the Listing for an inflammatory bowel disease like ulcerative colitis (*see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 5.00D), Listing 5.06 sets the following requirements:

**5.06  *Inflammatory bowel disease (IBD)*** (see 5.00D) documented by endoscopy, biopsy, imaging, or operative findings, and demonstrated by A, B, or C:

**A.** Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by imaging or in surgery, requiring two hospitalizations for intestinal decompression or for surgery, within a consecutive 12-month period and at least 60 days apart.

OR

**B.** Two of the following occurring within a consecutive 12-month period and at least 60 days apart:

1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or

2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or

3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping; or

4. Perianal disease with a draining abscess or fistula; or

5. Need for supplemental daily enteral nutrition via a gastrostomy, duodenostomy, or jejunostomy, or daily parenteral nutrition via a central venous catheter.

OR

**C.** Repeated complications of IBD (see 5.00D5a), occurring an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more, within a consecutive 12-month period, and marked limitation (see 5.00D5c) in one of the following:

1. Activities of daily living (see 5.00D5d); or

2. Maintaining social functioning (see 5.00D5e); or

17

3. Completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (see 5.00D5f).

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 5.06.  Alternately, to *equal* a Listing—e.g., based on his ileostomy—Mr. Taffi must prove that "the findings related to [the ileostomy were] at least of equal medical significance to those of a listed impairment."  20 C.F.R. § 404.1526(b)(2).  The record "must" also contain:

1. A prior administrative medical finding from [a state agency medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3. A report from the [Appeals Council]'s medical support staff supporting the medical equivalence finding.

SSR 17-2p, 82 Fed. Reg. 15263, 15265 (March 27, 2017).  Thus, the ALJ can only find medical equivalence if the record contains supportive medical opinion findings from either a state agency consultant or a medical expert.  *Id.*  And if the ALJ "believes the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," he need not "articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment."  *Id.*

Here, the ALJ made the following findings at Step Three:

No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. In reaching the conclusion that the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment, I also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 404.1527(f), 416.927(f) and Social Security Ruling 96-6p). I have specifically considered the claimant's ulcerative colitis under listing 5.06[.]

(Tr. 21 (emphasis added).)  Thus, the ALJ explicitly found that Mr. Taffi's ulcerative colitis did not *meet* Listing 5.06, and also highlighted the fact that the record does not contain the medical opinion evidence necessary to find that any impairment *equaled* a listing.  This is an adequate analysis of the Listings at Step Three.

Plaintiff's argument that the ALJ "made no Step Three analysis related to Plaintiff's ulcerative colitis and related ileostomy" (ECF Doc. 6, pp. 8-9) is clearly incorrect given the ALJ's explicit written findings.  Further, Plaintiff did not specifically identify any listing(s) that he allegedly met or equaled, and certainly did not meet his additional burden to "present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker*, 93 F. App'x at 728.

For the reasons set forth above, the undersigned concludes that the ALJ appropriately addressed the listings relevant to Plaintiff's ulcerative colitis and ileostomy at Step Three of the sequential analysis, and Mr. Taffi has not met his burden to show otherwise.

### 2.     Plaintiff Has Not Met His Burden to Show Error Under SSR 96-8p

Mr. Taffi also offers a cursory argument that "[t]he ALJ failed to consider the totality of Plaintiff's impairments contrary to SSR 96-8p," which requires the ALJ to "consider the limitations and restrictions imposed by all Plaintiff's severe and non-severe impairments."  (ECF Doc. 6, p. 9.)  Without much elucidation, he asserts that the ALJ failed to consider the effects of his combination of impairments "as set forth above," i.e., in the Step Three arguments (*id.*), apparently arguing that the ALJ failed to properly consider the medical records referencing his "ulcerative colitis status-post colectomy and ileostomy" and his related subjective complaints in adopting the physical RFC (*id.* at pp. 7-9).

19

A claimant's "residual functional capacity is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).  "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing See 20 C.F.R. §§ 404.1546(c), 416.946(c)).  An ALJ assesses a claimant's "residual functional capacity based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1).  "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 F. App'x at 157.

Here, the ALJ acknowledged Mr. Taffi's ongoing complaints of stomach pain in connection with his ulcerative colitis – status-post ileostomy (Tr. 22), but found:

> In terms of the claimant's ulcerative colitis, he underwent a colectomy and ileostomy in . . . late 2019. He currently endorses some intermittent abdominal pain, rectal pain, and urinary urge incontinence.  However, the medical record, as a whole, does not support a finding that these symptoms would prevent the claimant from engaging in full-time work. (Exhibits 3F6-9, 4F1-5, and 10F1-4)

(Tr. 23.)  The medical records the ALJ cited in support of this finding reflect the following:

- At a January 29, 2021 gastroenterology appointment, Mr. Taffi reported no abdominal pain, nausea, or vomiting, but noted prior acute, sharp abdominal pain that lasted for a month before resolving; he was taking over the counter antacids twice per week for acid reflux, which worked well; he had no abnormal gastrointestinal examination findings, but an ileostomy bag was present (Tr. 846-49); and

- At a May 20, 2022 gastroenterology appointment, Mr. Taffi reported feeling well; his ileostomy was noted to be present and working well; he denied breakthrough reflux symptoms, abdominal pain, nausea, vomiting, or bloody or black stools; he had no abnormal gastrointestinal examination findings (Tr. 329, 331-32; Tr. 537, 540).

In considering Mr. Taffi's subjective complaints and formulating the RFC, the ALJ also observed that Mr. Taffi had the ability to care for his personal hygiene, dress himself, perform household chores, shop for groceries and household items, and prepare meals; he enjoyed fishing, golfing, and hunting; and he had no difficulty using transportation.  (Tr. 23-24.)  The

20

ALJ concluded that this "full range of daily activities [was] inconsistent with a finding of disability." (*Id*.)  The ALJ also considered the medical opinions of the state agency medical consultants, the only medical opinions regarding Mr. Taffi's physical impairments.  (Tr. 24.)  The state agency consultants opined that Mr. Taffi could perform a reduced range of medium exertional work, and did not find a need for additional breaks.  (Tr. 77-78, 87-88.)  The ALJ found those opinions "somewhat persuasive," but concluded after considering all of Mr. Taffi's physical impairments that the "physical limitations overstate[d] . . . [Mr. Taffi's] capabilities" (Tr. 24) and restricted Mr. Taffi to a reduced range of light exertional work (Tr. 22).

Having considered the ALJ's written findings and the underlying records, the undersigned concludes that the ALJ appropriately considered the evidence relating to Mr. Taffi's ulcerative colitis status-post colectomy and ileostomy, explained the reasoning behind his findings, and adopted a physical RFC that was supported by substantial evidence.  Mr. Taffi certainly has not met his burden to demonstrate the contrary.

Accordingly, the undersigned concludes that the first assignment of error lacks merit.

**C.** **Second Assignment of Error: Substantial Evidence Supported the Physical RFC**

In his second assignment of error, Plaintiff argues the ALJ's Step Five finding that he could perform work at the light exertional level was not supported by substantial evidence.  (*Id*. at pp. 1, 10-14.)  Specifically, he asserts that the light RFC lacks support because "there was no new documentation or opinion stating that Plaintiff could perform work at the light level of exertion."  (*Id*. at p. 12.)  He argues that reversal or remand is required because, "[i]n the absence of a medical opinion, the ALJ substituted his own judgment" and "made a determination based on his opinion, without any supporting evidence, that Plaintiff could perform work at the light

level of exertion." (*Id.*)  He also argues the ALJ should have adopted a more restrictive RFC because the medical evidence supports his own subjective complaints. (*Id.* at pp. 12-14.)

In response, the Commissioner points out that there is no medical opinion stating that Plaintiff can perform <u>light</u> work "because the *only* medical opinions as to Plaintiff's physical limitations were the findings of the state agency reviewing physicians who found Plaintiff was capable of work at the <u>medium</u> exertional level." (ECF Doc. 7, p. 6 (italics in original, underline added).)  In other words, "Plaintiff is criticizing the ALJ for adopting a more restrictive RFC than found by the state agency reviewing physicians[.]" (*Id.*)  The Commissioner also disputes Plaintiff's argument that the ALJ's determination was "based on his opinion, without any supporting evidence," since the state agency opinions found Plaintiff capable of medium exertional work without a need for additional breaks. (*Id.* at p. 7.)  As to Plaintiff's argument that the ALJ should have adopted a more restrictive RFC, the Commissioner asserts that this amounts to an impermissible request for the Court to reweigh the evidence. (*Id.* at pp. 7-8.)

Mr. Taffi's assertion that the RFC lacks the support of substantial evidence because "there was no new documentation or opinion" saying he could perform light work is meritless. This is so, first, because the Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018) (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) and *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)); *see also Van Pelt v. Comm'r of Soc. Sec.*, No. 1:19 CV 2844, 2020 WL 7769729, at *10-11 (N.D. Ohio Dec. 30, 2020) (finding *Mokbel-Aljahmi* to be "contrary" to an argument that "the lack of any medical opinion evidence for . . . physical impairments, apart from two outdated opinions

22

from non-examining physicians, denotes a lack of substantial evidence supporting the RFC"). Instead, "the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled." *Rudd*, 531 F. App'x at 726.

Second, as the Commissioner points out, this is not a case where the record lacks medical opinion evidence to support the RFC. Here, the state agency medical consultants opined that Mr. Taffi could perform a reduced range of medium work without additional breaks. (Tr. 77-78, 86-88.) The ALJ considered those opinions in the context of the whole record, but found them "only somewhat persuasive" because the conclusion that Mr. Taffi could perform medium exertional work "overstate[d] [his] capabilities." (Tr. 24.) The ALJ instead found the evidence supported a more restrictive RFC that limited Mr. Taffi to a reduced range of light work. (Tr. 22.) Like other courts, the undersigned "will not fault the ALJ for finding more restrictions than the state agency reviewers opined." *Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 WL 2176539, at *7 (N.D. Ohio June 16, 2022) (citing cases).

Finally, as to Mr. Taffi's assertion that the medical evidence supports his subjective reports of greater limitations due to his physical impairments, this argument sidesteps the actual determination that is before this Court. Even if Mr. Taffi successfully presented substantial evidence to support an RFC with greater physical limitations, including a requirement for additional breaks during the workday, this Court cannot overturn the ALJ's contrary RFC finding "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. It is not this Court's role to weigh the evidence de novo. *Garner*, 745 F.2d at 387. And "'[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

For the reasons set forth above, the undersigned concludes that Mr. Taffi has failed to show that the physical RFC adopted by the ALJ lacked the support of substantial evidence. Accordingly, the undersigned concludes that the second assignment of error lacks merit.

## VII.    Recommendation

For the foregoing reasons, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

December 19, 2025

/s/Amanda M. Knapp
AMANDA M. KNAPP
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).